UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENNY J. BURNS,<br>    *Plaintiff*, | )   CASE NO. 3:23-cv-23 (KAD)<br>)<br>) |
| v. | )<br>) |
| FRANCESCO LUPIS, *et al.*,<br>    *Defendants*. | )   FEBRUARY 7, 2023<br>) |

## INITIAL REVIEW ORDER

Kari A. Dooley, United States District Judge:

Plaintiff, Denny J. Burns ("Burns"), currently confined at MacDougall-Walker Correctional Institution, filed this *pro se* complaint pursuant to 42 U.S.C. § 1983. Burns names four defendants,[1] Francesco Lupis, M.D., Regional Chief Operating Officer Kristen Shea, Health Services Grievance Coordinator R. Walker, and Warden John Doe. All Defendants are named in their individual and official capacities. Burns contends that Defendants were deliberately indifferent to his medical needs and subjected him to unconstitutional conditions of confinement. He seeks damages as well as declaratory and injunctive relief.[2] Throughout the complaint, Burns refers to many exhibits. However, there are no exhibits attached to the complaint.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

---

[1] The Clerk of the Court has included as defendants on the docket Provider and Regional Chief Operating Officer. These were included in the case caption as job descriptions for defendants Lupis and Shea. As the listing of defendants in the body of the complaint shows that they were not intended as separate defendants, the Clerk of the Court is directed to remove them as defendants in this case.
[2] Claims for injunctive relief may support official capacity claims. However, any claims for damages brought against Defendants in their official capacities are barred by the Eleventh Amendment and dismissed.

who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

Burns was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall") at the time of the incidents underlying this action. ECF No. 1 ¶ 3. Burns suffers from radiculopathy, acute lower back pain, tendinosis, a torn meniscus in his left knee, shoulder impingement syndrome, knee crepitus, and the strain of muscles and tendons in the posterior muscle group in his lower leg. *Id*. ¶ 9.

On March 15, 2022, Burns "was forced to go to segregation for [his] safety" because Dr. Lupis refused to renew his bottom bunk pass. *Id*. ¶ 10. That day, Burns began a hunger strike in the restrictive housing unit ("RHU") to protest his assignment to a top bunk. *Id*. ¶ 11. On March 17, 2022, Burns also refused to drink liquids "to expedite the situation." *Id*. ¶ 12.

On March 18, 2022, Burns saw Dr. Lupis because he had eaten no food in four days and taken no liquids for two days. *Id*. ¶ 13. When Dr. Lupis refused to speak to Burns about the bottom bunk pass, Burns asked the officers to return him to his cell. *Id*. Dr. Lupis then looked at

his computer and told Burns he did not meet the criteria for a bottom bunk pass. *Id*. Burns told Dr. Lupis about his MRI showing a torn meniscus, but Dr. Lupis still refused a bottom bunk pass. *Id*. Burns again asked to return to his cell at which time Dr. Lupis made allegedly unprofessional remarks, resulting in a verbal altercation with Burns. *Id*.

Burns was told that, because Dr. Burns refused to issue a bottom bunk pass, he would be found guilty at his disciplinary hearing on the charge of refusing housing. *Id*. ¶ 14. Burns pleaded guilty and received sanctions of five days confinement in segregation, fifteen days loss of mail, fifteen days loss of visits, and a loss of fifteen days of good time credit. *Id*. Burns also was barred from all jobs and programs for 120 days. *Id*.

On March 22, 2022, Burns was released from segregation and moved to cell H-2-94 on the top bunk. *Id*. ¶ 15. His cellmate occupied the bottom bunk. *Id*. On March 27, 2022, Burns injured his left knee climbing to the top bunk. *Id*. ¶ 16. Nursing staff observed the swollen knee and put Burns on the list to see Dr. Lupis. *Id*. Dr. Lupis refused to see Burns. *Id*. ¶ 17.

On April 6, 2022, nursing staff referred Burns to orthopedist Dr. Maletz because Dr. Lupis continued to refuse to treat Burns. *Id*. ¶ 18. Dr. Maletz issued Burns a bottom bunk pass and renewed his ibuprofen prescription to address his swollen knee. *Id*. Dr. Maletz told Burns that, pursuant to Department of Correction policy, there were five different reasons for him to have a bottom bunk pass. *Id*. ¶ 19.

In October 2021, before his transfer to MacDougall, Dr. Sullivan at Osborn Correctional Institution had requested an MRI of Burns' lower spine to investigate nerve pain related to a 2019 injury from his cell door. *Id*. ¶ 20. When Burns was transferred to MacDougall, Dr. Lupis refused to process the final order from Dr. Sullivan to enable Burns to have the MRI. *Id*. ¶ 21. Nurses had to contact Dr. Sullivan in August 2022 to get the final paperwork processed because

Dr. Lupis refused to treat Burns' complaints of back pain. *Id*. Dr. Lupis also refused to continue Burns' prescription of gabapentin for nerve pain without conducting an examination. *Id*. ¶ 22.

On June 28, 2022, Burns wrote to the Warden about his back pain. *Id*. ¶ 23. The Warden referred the letter to Dr. Lupis, who responded that Burns had arrogantly refused medical treatment the last time he was in Dr. Lupis' office. *Id*. Burns contends that Dr. Lupis is using their verbal altercation in March 2022 to refuse all medical treatment. *Id*. Burns states that this action has put his life in danger as he is diabetic and needs chronic care. *Id*.

Burns underwent the MRI in late October or early November 2022. *Id*. ¶ 24. The MRI showed an "Annal fissure in [his] L4 and L5 that causes the gel[] in the center of [his] disk to push out and put pressure on the nerve." *Id*. Burns contends that Dr. Lupis' failure to process the MRI paperwork and failure to renew his pain medication caused him unnecessary pain. *Id*.

Burns alleges that as the Regional Chief Operating Officer ("RCOO"), Shea can change his medical provider to another doctor. *Id*. ¶ 26. On March 19, 2022, Burns sent her a request explaining about the altercation and lack of any doctor-patient relationship and seeking another doctor, but he received no response. *Id*. Burns sent a second request on May 3, 2022, stating that Dr. Lupis is refusing medication and treatment but again received no response. *Id*. ¶ 27. Burns told nursing staff that he intended to sue Shea as well as Dr. Lupis. *Id*.

On June 1, 2022, Burns received a response from Shea. *Id*. ¶ 28. She stated that Dr. Lupis was Burns' assigned provider and noted that he also had been evaluated by Dr. Maletz. *Id*. Shea told Burns that he must discuss his medication concerns with his provider. *Id*.

Walker is the health services grievance coordinator at MacDougall. *Id*. ¶ 30. Burns alleges that Walker refused to process his grievances because she rejected a grievance because he purportedly included more than one issue. *Id*. Burns disputes the grievance rejection and

4

contends that she did not read the grievance form properly. *Id*. ¶ 31. Burns alleges that Walker read his grievances out loud in front of other inmates in violation of his HIPAA rights. *Id*. ¶ 33.

Burns submitted a request to Warden Doe on June 28, 2022, but the Warden responded that he is not Dr. Lupis' boss. *Id*. ¶¶ 23, 35. Burns contends that the Warden could have assigned him to a bottom bunk if he so chose. *Id*.

**Discussion**

Burns contends that Lupis and Shea were deliberately indifferent to his serious medical needs, Walker violated his due process rights by making administrative remedies unavailable to him, and Warden Doe violated his Eighth Amendment rights.

*Deliberate Indifference to Medical Needs*

Burns, a sentenced inmate,[3] alleges that the Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment prohibition against cruel and unusual punishment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of sentenced prisoners are considered under the Eighth Amendment). To state a cognizable claim for deliberate indifference to serious medical needs, Burns must allege facts showing that his medical need was "sufficiently serious." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance*

---

[3] The Court takes judicial notice of the Connecticut Department of Correction website which reveals that Burns was sentenced on October 20, 2011. *See*, *e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of Bureau of Prisons inmate location information).

*v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Burns alleges that he suffers from radiculopathy, tendinosis, low back pain, shoulder impingement syndrome, and a torn meniscus. Knee injuries generally are considered insufficient to constitute a serious medical need to support a deliberate indifference claim. *See Gaines v. Wright*, No. 3:17-cv-1513 (VLB), 2017 WL 4694168, at *4 (D. Conn. Oct. 19, 2017) (citing cases); *see also Johnson v. Wright*, 477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007) (medical conditions and injuries such as torn meniscus, arthritis, and ligament tears are not sufficiently serious to support Eighth Amendment claims), *aff'd*, 324 F. App'x 144 (2d Cir. 2009). Although the primary complaint underlying his claims against Lupis and Shea appears to be his torn meniscus, he also identifies other conditions allegedly causing him to experience pain. Thus the Court will assume for the purposes of initial review only that Burns has a serious medical need.

Burns also must show that Defendants were deliberately indifferent to his serious medical needs. To establish the requisite *mens rea,* Plaintiff must allege that "the charged officials [were] subjectively reckless in their denial of medical care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate ham will result." (quotation marks omitted)). Thus, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

Burns' claim concerning his knee is construed as one involving a delay in treatment, as

opposed to a denial of treatment.[4] Courts distinguish claims for denial of treatment from those for delay in treatment. *See Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019). Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth Amendment rights are violated only where the defendant "knowingly or intentionally" delayed medical treatment. *See Jimenez v. Sommer*, No. 14-cv-5166 (NSR), 2017 WL 3268859, at *8 (S.D.N.Y. July 28, 2017) (citation omitted). "[T]he Second Circuit has reserved those instances to cases where prison officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for three days or delayed major surgery for over two years[.]" *Id*. (citation and internal quotation marks omitted).

 Burns alleges that Dr. Lupis refused to see him and denied him all treatment after their verbal altercation on March 18, 2022. This allegation is sufficient to plausibly allege that Dr. Lupis denied treatment as a form of punishment. The claims against Dr. Lupis for delay in treatment will proceed.

Burns also alleges that Dr. Lupis refused to complete paperwork for an MRI, requiring Burns to wait a year for the procedure. The Court considers at least half of the period Burns was required to wait as attributable to the refusal to provide any treatment after March 18, 2022. This claim will proceed as well.

Finally, Burns alleges that Dr. Lupis discontinued his medication to address nerve pain without any examination. As Burns alleges that his back condition was painful, the Court infers that Dr. Lupis' action caused Burns to experience increased back pain. *See Barnes v. Malavi*, 412 F. Supp. 3d 140, 143 (E.D.N.Y. 2019) (prisoner must have been denied medical care and the

---

[4] The Court notes that the denial of the bottom bunk pass occurred on March 15, 2022 and the fall on March 27, 2022. Burns alleges, however, that, on April 6, 2022, Dr. Maletz issued him a bottom bunk pass and prescribed medication for the injury from the fall. Thus, Burns was without a bottom bunk pass for only three weeks and without treatment for his knee for ten days.

inadequate medical care must have been sufficiently serious). The claim for denial of medication also will proceed.

Burns contends that Shea refused to assign him a different medical provider after he informed her that Dr. Lupis refused to treat him. As Burns alleges that defendant Shea had the authority to replace Dr. Lupis as his medical provider, the Court will permit this claim to proceed.

*Due Process*

Burns contends that Walker denied him due process by interfering with the administrative remedy process. However, an inmate has no constitutional right to an administrative remedy program, to have an administrative remedy properly processed or investigated, or to receive a response to an administrative remedy he filed. *See Crispin v. Sussel*, No. 3:21-cv-885 (KAD), 2023 WL 22421, at *5 (D. Conn. Jan. 3, 2023). Due process claims relating to prison grievance procedures "confuse[] a state-created procedural entitlement with a constitutional right" and that "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures.'" *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).

As Burns has no federally protected right to grievance procedures, his claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Warden Doe*

Burns alleges that when he informed Warden Doe of his medical issues, Warden Doe merely responded that he is not Dr. Lupis' supervisor. Burns contends that Warden Doe had the authority to place him in a cell on the bottom bunk.

Burns alleges that his bottom bunk pass was discontinued on March 15, 2022 and

renewed on April 6, 2022. As Burns alleges that he wrote to Warden Doe on June 28, 2022, months after the pass was re-issued, there was nothing left to be done or remedy to be offered by Warden Doe and no constitutional violation could therefore have occurred.

Further, the Second Circuit has rejected as objectively reasonable the failure of non-medical staff to challenge a doctor's order. *See Cuoco v. Mortisugu*, 222 F.3d 99, 111 (2d Cir. 2000) ("One can imagine the repercussions if non-medical prison officials were to attempt to dictate the specific medical treatment to be given to particular prisoners—for whatever reason.").

Burns offers no allegations that would support an exception to this unmistakably valid concern. *See DeAngelis v. Farinella*, No. 3:16-cv-307 (MPS), 2017 WL 4683996, at *12 (D. Conn. Oct. 18, 2017) (prison officials are entitled to defer to opinions of medical providers) (citation omitted). The claim against Warden Doe is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Orders**

In accordance with the foregoing analysis, the Court enters the following orders:

(1) The claims against Walker and Doe are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The claims against Lupis and Shea will proceed for further development of the record.

(2) The Clerk shall verify the current work address of Lupis and Shea with the Department of Correction Office of Legal Affairs and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to Lupis and Shea in their individual capacity at their confirmed addresses by **February 28, 2023**. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the request. If either Defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on

Defendants in their individual capacity and Defendants shall be required to pay the cost of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on Lupis and Shea in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4) The Clerk shall send Plaintiff a copy of this Order.

(5) The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **September 5, 2023**.

(8) All motions for summary judgment shall be filed by **October 5, 2023**.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. **Failure to do so may result in the dismissal of this case.** The plaintiff must give notice of a new address even if he is

incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(11)   Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Discovery requests shall not be filed with the court, *see* D. Conn. L. Civ. R. 5(f), and must be served on Defendants' counsel by regular mail.

(12)   The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of February 2023.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE