UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENNY J. BURNS, | ) | CASE NO. 3:23-cv-23 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRANCESCO LUPIS, *et al.*, | ) | APRIL 3, 2024 |
| *Defendants*. | ) | |

<u>MEMORANDUM OF DECISION</u>
RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 28)

Kari A. Dooley, United States District Judge:

Plaintiff Denny J. Burns ("Burns") filed this civil rights action pursuant to 42 U.S.C. § 1983. Following initial review, only Eighth Amendment claims for deliberate indifference to medical needs against Dr. Lupis and Regional Chief Operating Officer ("RCOO") Shea ("Defendants") remain. *See* ECF No. 10. Defendants have filed a motion for summary judgment on the ground that Burns was provided adequate medical care. For the following reasons, Defendants' motion is GRANTED. (ECF No. 28)

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. . . ." *Giordano v. Market Am., Inc.*,

599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

The failure to oppose summary judgment, standing alone, is insufficient cause to grant the motion. The Court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact." *Vermont Teddy Bear Co. v. 1-800-BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*." *Jackson v. Onondaga Cnty.*, 549 F. Supp.

2d 204, 209 (N.D.N.Y. 2008) (footnotes omitted). However, the Court is not precluded from doing so.

When the complaint is verified, it may be treated as an affidavit for summary judgment purposes only insofar as the statements are not conclusory and were made on personal knowledge. *Curtis v. Cenlar FSB*, 654 F. Appx. 17, 20 (2d Cir. 2016) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). Even nonconclusory statements in a verified complaint, however, "may be insufficient to create a factual issue where [they are] (1) 'largely unsubstantiate by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of belief necessary to credit the allegations made in the complaint.'" *Jackson*, 549 F. Supp. 2d at 210 (citation omitted).

**Facts[1]**

In 2022, while confined at MacDougall-Walker Correctional Institution, Dr. Lupis was Burns' assigned doctor. Defs.' LRS at 1 ¶ 2. Dr. Lupis acted as Burns' primary care physician, treating him for routine conditions and referring him to specialists for more involved conditions.

---

[1] The facts are taken from Defendants' Local Rule 56(a) Statement ("LRS") and supporting exhibits. *See* ECF No. 28-2. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

Defendants informed Burns of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Local Rule of Civil Procedure 56(b), ECF No. 28-3. Despite this notice, Burns has not filed any opposition to the motion for summary judgment nor sought an extension of time within which to do so. The fact that Burns is unrepresented does not excuse him from complying with the Court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-cv-6358 (MAT), 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2023) (citing *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Jackson v. Onodaga Cnty.*, 549 F. Supp. 2d 204. 214 (N.D.N.Y. 2008) ("when a plaintiff is proceeding pro se, 'all normal rules of pleading are not absolutely suspended'") (citation omitted). Thus, Defendants' facts, where supported by the evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions. . . .").

*Id*. at 1 ¶ 1.

On March 15, 2022, Dr. Lupis did not renew Burns' bottom bunk pass because, after reviewing Burns' medical records and in his medical opinion, the pass was not required. *Id*. at 1 ¶¶ 3–4. After the pass was denied, Burns refused to accept a top bunk assignment, and thereafter, was sent to the restrictive housing unit for refusing the bunk assignment. *Id*. at 1 ¶ 5. After being placed in restrictive housing, Burns began a hunger strike. *Id*. at 1 ¶ 6.

On March 18, 2022, Dr. Lupis saw Burns for the hunger strike. *Id*. at 2 ¶ 7. Burns became argumentative and refused medical attention. *Id*. When Dr. Lupis again refused to issue a bottom bunk pass, Burns became angry with Dr. Lupis. *Id*. at 2 ¶ 8. However, neither party was yelling. *Id*. at 2 ¶ 9. The hunger strike lasted from March 18, 2022 until March 25, 2022. *Id*. at 2 ¶ 10. During that time, Burns was monitored on an ongoing basis. *Id*.

From at least March 15, 2022 through September 28, 2022, medical staff checked Burns' blood sugar levels three times per day, except when Bruns refused the checks. *Id*. at 2 ¶ 11.

On March 27, 2022, Burns injured his knee while climbing to his top bunk. *Id*. at 2 ¶ 12. He complained about his knee to the nurses during his daily blood sugar tests. *Id*. at 2 ¶ 13. On April 4, 2022, Burns was referred to the in-house orthopedist for his complaints of knee pain. *Id*. at 2 ¶ 14.

On April 4, 2022, Dr. Lupis reviewed Burns' medication list with particular attention to his insulin and the daily blood sugar tests. *Id*. at 2 ¶ 15.

Burns saw the orthopedist on April 6, 2022. *Id*. ¶ 16. Dr. Lupis did not treat Burns for his knee pain or make any treatment decisions regarding tests or imaging of his knee. *Id*. On April 6, 2022, the orthopedist prescribed Ibuprofen for pain. *Id*. at 3 ¶ 17.

On April 11, 2022, a physician assistant ordered routine laboratory tests and referred

Burns to an optometrist for an examination. *Id*. at 3 ¶ 18.

On April 20, 2022, Burns' order for Gabapentin expired. *Id*. at 3 ¶ 19. On April 29, 2022, Dr. Lupis reviewed the request for renewal of the prescription. *Id*. at 3 ¶ 20. Gabapentin is an anticonvulsant that is used for treatment of seizures or pain in the nerves and skin that is typically caused by shingles. *Id*. at 3 ¶ 22. Dr. Lupis determined that Gabapentin was not appropriate for Burns' pain as he was not suffering from seizures or pain in the nerves and skin caused by shingles. *Id*. at 3 ¶¶ 21, 23. In addition, Burns had been prescribed 800 mg Ibuprofen by the orthopedist and Dr. Lupis determined that this medication was appropriate treatment for his pain. *Id*. at 3 ¶ 24.

Burns had an eye examination on May 20, 2022. *Id*. at 3 ¶ 25. On June 10, 2022, he was seen at UConn Health Center for examination and treatment of his knee. *Id*. at 3 ¶ 26.

On June 17, 2022, Dr. Lupis put Burns on sick call based on his blood sugar test results. *Id*. at 4 ¶ 27. He also authorized weekly blood pressure checks. *Id*. at 4 ¶ 28. On July 10, 2022, Burns was seen by a nurse for ankle pain and swelling. *Id*. at 4 ¶ 29. On August 10, 2022, he was seen by a podiatrist. *Id*. at 4 ¶ 30.

On August 15, 2022, Burns was seen on an emergency basis for complaints of back pain and received an injection of ketorolac tromethamine, a drug used to relieve moderately severe pain. *Id*. at 4 ¶ 31. On August 17, 2022, Burns was placed on the nurse sick call list for back pain. *Id*. at 4 ¶ 32. On August 23, 2022, a physician assistant submitted a request that Burns receive an MRI because of his back pain. *Id*. at 4 ¶ 33. The decision on whether to conduct an MRI and the scheduling of the procedure is decided by UConn Health and Dr. Lupis had no control over these decisions. *Id*.

On August 30, 2022, and September 27, 2022, Dr. Lupis reviewed Burns' medications.

*Id*. at 4 ¶ 34. On September 28, 2022, Burns was transferred to Osborn Correctional Institution. *Id*. ¶ 35.

Burns' spinal condition was treated by orthopedists. *Id*. at 4 ¶ 36. Dr. Lupis was not aware that an MRI of Burns' spine had been requested before the request in August 2022. *Id*. at 5 ¶ 37. Dr. Lupis was not required to complete or approve any paperwork for Burns to receive an MRI. *Id*. at 5 ¶ 38.

**Discussion**

Burns claims that Dr. Lupis refused to treat him and denied him all treatment after March 18, 2022, refused to complete paperwork for an MRI causing him to wait a year for the procedure, and discontinued medication to address nerve pain without explanation. Burns also claims that RCOO Shea refused to assign him a different medical provider after he informed her that Dr. Lupis refused to treat him. Defendants move for summary judgment on both claims.

The Eighth Amendment prohibits deliberate indifference to an inmate's serious medical need or medical condition by medical staff members as well as correctional staff members. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). An inmate must meet two elements to establish that a custody official or medical provider was deliberately indifferent to his medical needs. The first requires the inmate to demonstrate that his medical need or condition is objectively serious. *Hill v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain") (internal quotation marks and citation omitted).

6

In determining the seriousness of a medical condition, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain*." Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). If a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," rather than a denial of any treatment for his or her condition, "it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702).

Plaintiff must also establish that Defendants were deliberately indifferent to this serious medical condition or need. To meet his burden, Plaintiff must allege that Defendants were actually aware that his or her actions or inactions would cause a substantial risk of serious harm. *See Hill*, 657 F.3d at 122 ("[T]he official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' ") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligent or inadvertent conduct, however, does not constitute deliberate indifference. *See Estelle*, 429 U.S. at 105–06 (deliberate indifference requires a greater showing than simply "an inadvertent failure to provide adequate medical care" or "negligen[ce] in diagnosing or treating a medical condition").

Courts within the Second Circuit have found that treatment delays can satisfy these requirements where there was a needlessly prolonged delay, or where officials deliberately delayed the treatment as a form of punishment or ignored a life-threatening and fast-degenerating

condition. *See Brockett v. Lupis*, No. 3:21-cv-355 (KAD), 2022 WL 1658835, at *8 (D. Conn. May 25, 2022); *Feliciano v. Anderson*, No. 15-cv-4106 (LTS) (JLC), 2017 WL 1189747, at *11 (S.D.N.Y. Mar. 30, 2017) ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years.") (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999)). A "delay in treatment does not violate the Constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Thomas v. Nassau Cnty. Corr. Ctr.*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance*, 143 F.3d at 703).

*Dr. Lupis*

Burns' remaining claims against Dr. Lupis include that Dr. Lupis refused to see him and denied him all treatment after their verbal altercation on March 18, 2022, Dr. Lupis refused to complete paperwork for an MRI causing him to wait a year for the procedure, and Dr. Lupis discontinued his Gabapentin prescription without explanation. Defendants do not argue that Burns did not have a serious medical condition.

**Denial & Delay of Treatment**

As to Burns' claim regarding his bottom bunk pass, he alleges that Dr. Lupis refused to renew the bottom bunk pass on March 15, 2022, he fell and injured his knee climbing to the top bunk on March 27, 2022, and an orthopedist issued him a bottom bunk pass on April 6, 2022. Thus, these allegations concern a delay in treatment. *See* Initial Review Order, ECF No. 10 at 7 n.4. To the extent that Burns claims that Dr. Lupis refused to treat other medical complaints after

March 15, 2022, the claim is for a denial of treatment.

Burns went without a bottom bunk pass for three weeks. Although Burns alleged that he suffered several conditions that he believed warranted a bottom bunk pass, Burns has not identified any life-threatening or fast-degenerating condition. Thus, to meet the subjective component of the deliberate indifference test on this claim for delay in treatment, Burns must present evidence that Dr. Lupis delayed the bottom bunk pass as a form of punishment. Burns alleges, however, that his argument with Dr. Lupis occurred on March 18, 2022, *after* Dr. Lupis refused to renew the pass. He presents no evidence suggesting that Dr. Lupis would want to punish him on or prior to March 15, 2022. In addition, after reviewing Burns' medical conditions, Dr. Lupis did not consider the bottom bunk pass medically necessary. Thus, this claim is a disagreement over treatment, which is not cognizable under § 1983. *See Stevens v. Goord*, 535 F. Supp. 2d 373, 384 (S.D.N.Y. 2008) ("Mere disagreement over choice of treatment, or even a claim that negligence or medical malpractice has occurred, does not create a constitutional claim.").

Burns' claim that Dr. Lupis failed to treat him after March 18, 2022 is belied by the record evidence. Although Dr. Lupis may not have examined or physically met with Burns, he continued to monitor his condition and prescribe treatment. For example, Dr. Lupis reviewed Burns' medications on April 4, 2022, Ex. B, ECF No. 31, at 73; placed Burns on sick call and ordered weekly blood pressure checks on June 17, 2022, *id* at 35–37, 39–40; and when Burns was treated on an emergency basis on August 15, 2022, Dr. Lupis authorized the injection for his back pain. *Id.* at 19. Burns fails to present evidence demonstrating a genuine issue of fact regarding his claim that Dr. Lupis failed to treat him after March 18, 2022. *See Jackson*, 549 F. Supp. 2d at 210.

**MRI Delay**

Burns contends that Dr. Lupis delayed the MRI on his back. Burns alleges that an MRI of his lower spine was ordered by a doctor at Osborn Correctional Institution in October 2021. Compl., ECF No. 1 ¶ 20. On April 1, 2022, Burns submitted a medical request inquiring about the scheduling of the MRI. ECF No. 31 at 78. The nurse responded that the MRI request was pending at UConn Health for scheduling. *Id.* Dr. Lupis avers that he was unaware that an MRI had been requested and that the scheduling of MRI procedures is done by UConn Health and that he has no involvement or ability to schedule the procedure. *See* Lupis Decl., Ex. A, ECF No. 28–4 at ¶¶ 23, 25. Burns fails to present any contrary direct evidence so as to create a genuine issue of fact regarding his claim that Dr. Lupis delayed his MRI.

**Discontinuance of Gabapentin**

Dr. Lupis avers that he discontinued Burns' prescription for Gabapentin because it was not appropriate to treat any condition from which Burns suffered. In addition, Dr. Lupis noted that Burns had been prescribed ibuprofen in a dose that, in Dr. Lupis' opinion, was sufficient to treat Burns' complaints of pain. ECF No. 28-4 ¶ 14. Burns provides no contrary evidence that Dr. Lupis' decision was based on anything other than his medical judgment. Thus, the claim regarding the discontinuance of Gabapentin is merely a disagreement over treatment which is not cognizable under § 1983. *See Hill,* 657 F.3d at 123 (prisoner's claim that medication prescribed was insufficient and stronger pain medication was needed "falls far short of alleging a deliberate indifference claim").

*RCOO Shea*

Burns' only claim against RCOO Shea is that she failed to assign him another medical provider after he complained about Dr. Lupis. As the Court has determined that Dr. Lupis did not

provide unconstitutionally inadequate medical treatment, there is no factual basis for the claim against RCOO Shea. *See Wesolowsky v. Harvey*, 784 F. Supp. 2d 231, 234 (W.D.N.Y. 2011) (finding plaintiff failed to allege or prove that a prison official defendant failed to train or supervise a doctor because "there was no underlying constitutional violation" that the doctor committed).

**Conclusion**

Defendants' motion for summary judgment is GRANTED. (ECF No. 28) The Clerk of the Court is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of April 2024.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

11